LUIS COLÓN VEGA, ETC., Plaintiff and Appellee, *v.* THE GOVERNMENT OF THE CAPITAL OF PUERTO RICO, Defendant and Appellant, and UNITED STATES CASUALTY Co., Defendant.

No. 8569. Argued March 17, 1943.—Decided May 18, 1943.

*J. Valldejuli Rodríguez* for appellant. *E. Díaz Santana* and *E. Mieres Calimano* for appellee. *James R. Beverly, R. Castro Fernández,* and *José López Baralt* for defendant United States Casualty Co.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

On October 20, 1938, at Stop 36½ of Hato Rey on the Military Road (*Carretera Central*), an automobile, the property of the Government of the Capital of Puerto Rico that was returning from Río Piedras to San Juan, driven by a chauffeur employed by said Government, hit Herminio Colón, a 12-year old boy who was at the time standing by the right sidewalk, causing a fracture of the boy's skull and other injuries of less importance.

The original complaint filed against the Government of the Capital only was dismissed by the District Court of San Juan because, in its judgment, it did not state facts sufficient to constitute a cause of action against the defendant municipality. Said judgment was reversed by this Supreme Court, and the case remanded to the lower court for further proceedings not inconsistent with the opinion rendered, which appears published in 57 P.R.R. 15. Plaintiff filed an amended complaint which was answered by the municipality with a general denial and specifically as to the essential facts, and

alleging furthermore that the facts stated were not sufficient to constitute a cause of action.

On August 2, 1940, the plaintiff, with leave of the court and with the consent of the municipality, filed a third amended complaint, in which the insurance company, insurer of the automobile which caused the injuries, was included as party defendant, and in which it was alleged: that the Government of the Capital owns and operates, with business purposes, the aqueduct which supplies water to San Juan, Río Piedras, Cataño, and Bayamón; that among its rights and duties, is that of taking care, through its employees, of the conservation and operation of said aqueduct, using, as a means of locomotion to transport the technical employees, which it hires for the different works of conservation of the aqueduct, to the above-named municipalities, automobiles belonging to it, driven by persons employed and authorized by the defendant government; that the automobile that hit the Colón boy was being used on the day of the accident to drive to Río Piedras an employee who was to work in the conservation of the aqueduct, and was driven by a chauffeur of the municipality, duly authorized to drive motor vehicles in the Island; that the accident took place when the automobile was on the return trip from Río Piedras to San Juan, driven by said chauffeur in the performance of the duties of his employment; that the cause of the accident was the carelessness and negligence of the chauffeur when trying to pass, at a speed of over fifty miles per hour, another automobile which was being driven in front of him in the same direction of Río Piedras to San Juan, passing between the front automobile and the sidewalk without reducing speed, or blowing the horn or taking any precaution whatsoever; and as a consequence of said negligence, the boy was hit and swept a distance of over thirty meters. Compensation of fifteen thousand dollars, costs, and attorney's fees were claimed.

The insurance company appeared and filed an answer specifically denying all the facts alleged in the complaint,

and as special defenses alleged: (1) that the facts stated are insufficient to constitute a cause of action against the insurance company; and (2) that the Government of the Capital, in violation of the clauses of the insurance contract, has not furnished the insurance company, to the date of the answer, November 7, 1940, with either the summons or the pleadings in this case, having also failed to notify it of the filing of the action, as well as the multiple proceedings and incidents of the case; and that, without the consent or knowledge of the defendant, the Government of the Capital assumed the defense of the action, having appointed an attorney to represent it. The insurance company alleges that the failure to comply with the above-mentioned requisites, exonerates it of any responsibility towards the insured Government or towards the injured boy, according to the clauses of the policy.

The Government of the Capital did not file an answer to the amended complaint, and did not appear at the trial, notwithstanding the fact that it had appointed and paid an attorney to protect the interests of the taxpayers, and in spite of the fact that said attorney had been notified as to the date set for the trial. The lower court entered judgment ordering the defendant government to pay plaintiff the sum of $6,000 plus costs, and dismissed the complaint as to the insurance company. Not agreeing with the judgment as to the exoneration of said company, plaintiff took an appeal therefrom.

On June 28, 1941, J. Valldejuli Rodríguez, Esq., attorney for the Government of the Capital, filed a lengthy motion in which he asked that the judgment entered against the Municipality, be set aside in order that the latter might have an opportunity to appear at the hearing of the case on the merits. The motion having been dismissed, the Government of the Capital brought the present appeal before this court.

The hearing of both appeals took place on March 17, 1943, at which attorneys for plaintiff and for the insurance com-

pany appeared. Counsel for the municipality failed to appear. He submitted the case without argument, sustaining in his brief that the District Court of San Juan erred in dismissing his motion to set aside the judgment; in not declaring that the injured minor was guilty of contributory negligence; upon entering a judgment that is "the willful act of the magistrate of the lower court who thus shows his passion, prejudice, and partiality against corporations, particularly against the Capital of Puerto Rico"; in entering an excessive and improper judgment; in exonerating the insurance company; and in entering a judgment that is not sustained by the evidence. We shall consider said assigments in the same order in which they have been stated.

 1. Among the many reasons advanced by the municipality in support of the motion to vacate the default judgment entered against it, the following appear:.

(a) That the motion to join the insurance company as a party defendant was not set for hearing and was granted without hearing the parties; and that the third amended complaint was filed without leave of court.

In its order refusing to set aside the judgment, the lower court stated that "on August 2, 1940, plaintiff asked this court, with the consent of the defendant, to be allowed to file a third amended complaint, of which defendant was notified on that same day." At the foot of the third amended complaint, which is included in the judgment roll, appears the notice served on counsel for the municipality on August 2, 1940. It does not appear from the record before us, that after said notice of the third amended complaint was served on him, counsel for the municipality made any objection to the form and manner in which said complaint had been filed and notified. Lacking evidence to the contrary, we must assume that the proceedings took place according to law.

 Besides, if the municipality consented to the filing of said amended complaint, it is now estopped to raise any objections which were not made at the opportune time and

which must be considered as waived. ■ Furthermore, if any error had been committed by allowing the insurance company to be joined in the complaint as a party defendant, that error could not have prejudiced the defendant municipality, as the latter was more interested than anybody else in joining the company as a party defendant in the action, as said company, by means of the policy, had agreed to pay on behalf of the municipality, in the event an adverse judgment was entered against it.

■ The contention of the appellant municipality that, after the filing of the third amended complaint, the municipality ought to have been summoned anew is not worthy of serious consideration. It is elementary that the purpose of the summons is to bring a defendant party within the jurisdiction of the court. The Government of the Capital was brought under the jurisdiction of the lower court by means of the original summons, and will continue so until a final judgment is entered and executed. The legal representative of the defendant municipality consented to and was served with copy of the amended complaint in due time. It was his unavoidable duty to plead to said complaint within the term of ten days granted him by the law, and he failed to do so. He chose to abandon the defense of the taxpayers who pay him to defend their interests, failing, first, to notify the insurance company in compliance with the terms of the policy, later allowing a default to be entered against the municipality, without making any effort whatsoever to dissolve it, and failing to appear at the trial, as he should have done, to defend his client against the adverse interests of the plaintiff who claimed a large indemnity, and of the insurance company which alleged it had been released from all responsibility due to the violation by the municipality of the terms of the policy.

■ The third amended complaint substituted for the second one for all legal purposes, and having been filed with leave of court, and the consent of the municipality, when the

latter failed to answer, it was proper to enter judgment by default after the evidence of the plaintiff was heard. *Quiñones* v. *Riera,* 51 P.R.R. 736; 1 Bancroft's Code Pleading, p. 810, §561.

(*b*) That none of the pleadings of the insurance company were notified to the Government of the Capital.

It would suffice to say, to decide this question, that it would be unfair to hold plaintiff responsible for the failure of a defendant to serve—assuming that such duty exists—its pleadings on its codefendants.

Besides, the notice of the third amended complaint having been served on the attorney for the Government of the Capital on August 2, 1940, the time to answer it expired on the twelfth of that same month, from which date the defendant municipality was in default, as it failed to file any pleadings against said complaint. When the insurance company filed its answer on November 7, 1940, the municipality had already been in default for nearly three months, without there being pending on that date any motion to dissolve it. Under those conditions, the action went to trial, the defendant municipality having failed to appear in spite of the fact that its attorney had been notified eleven days previous to the date set for the trial.

Bearing in mind all the circumstances to which we have adverted, and the negligence of the attorney, which is imputable to the client, not being a legal cause sufficient to vacate a judgment such as the one entered in this case, we decide that the court *a quo* committed no error when it dismissed the motion asking the lower court to vacate said judgment.

2. The lower court, after examining and weighing the evidence introduced by plaintiff—defendants having failed to introduce any evidence concerning the accident—arrived at the following conclusions:

(*a*) That the accident was due to the negligence of the municipality's chauffeur, who at that moment was driving the automobile at a speed of 45 miles per hour, and passed to

the right of another automobile that was going in the same direction, thus violating the provisions of §§12(e) and 13(a) of the Motor Vehicle Act in force (Act No. 75 of April 13, 1916, Sess. Laws, p. 140).

(b) That on the date of the accident the Government of the Capital operated for business purposes the San Juan aqueduct, furnishing water to Río Piedras, Cataño, and Bayamón.

(c) That on the day of the accident the automobile was being used by the Government of the Capital in proprietary functions, and was returning at the time from Guaynabo, where it had gone to drive an employee of the municipality by order of the Head of the Department of Public Works.

We have already seen that the Government of the Capital failed to file any defense to the third amended complaint. The insurance company limited itself to specifically denying the facts alleged by the plaintiff, and as its only special defense raised the one relative to the non-compliance with the clauses and terms of the policy by the municipality. The question as to the belatedly alleged contributory negligence of the minor plaintiff was not raised before the lower court, and the latter was not under the obligation to make any finding as to this point, as it did not.

We have carefully examined the evidence and we find that the same is more than enough to sustain the findings of the lower court. We fail to find in all the evidence any circumstance which shows that the injured boy contributed in any form whatsoever, with his alleged lack of care or caution, to the damage suffered by him. The testimony of various eye-witnesses shows that the child, before crossing the road in front of the Auxilo Mutuo, looked towards Río Piedras and towards Hato Rey to make sure there were no cars coming in either direction. The child saw an automobile coming from Río Piedras towards San Juan, driven by the witness Lorenzo Delgado, and correctly judged that he could cross without any danger. In fact, he was able to cross without Delgado's

car causing him any harm; and at the moment he was ascending the sidewalk of the Auxilio Mutuo he was hit and swept for a distance of thirty meters by the municipality's car, which was being driven at a speed forbidden by law, and which was trying to pass Delgado's car on the right, also against the law.

The lower court did not err in its findings.

▇▇▇ 3. From the record before us, we find no basis or justification whatsoever for the unsupported charge made against the judge of the lower court, Judge La Costa, Jr., that his judgment was a result of his passion, prejudice, and partiality against corporations, and especially against the Government of the Capital. It is a reproachable practice to make such charges when there cannot be brought before the appellate court a scintilla of evidence that the judge of the lower court failed to act with the equanimity, rectitude, and impartiality with which those who have the grave responsibility of administering justice must act. It is even more reproachable when said practice is used by the attorney as a smoke screen to cover his own negligence and his unjustified abandonment of the defense of the interests of the Government of the Capital, which will now be obliged to pay a judgment which otherwise would have been payable by the insurance company.

▇▇▇ 4. Is the sum of $6,000 granted to the injured minor excessive? Let us examine the evidence.

The minor testified that when he was hit by the car, he lost consciousness and did not recover it until the following day in the clinic where he stayed three days, later being transferred to the Municipal Hospital of San Juan, where he stayed for over a month; that he was in the fourth grade at school; that ever since the accident, he cannot study because his sight is blurred and his head aches; that he feels his body dormant, feels nausea, and the headache increases; that he now has fits, from which he did not suffer previous to the accident;

that to the present he has had three fits, and that when he suffers from said fits, his head gets dizzy, he vomits, and loses consciousness.

While testifying as a medical expert, Dr. Luis C. Boneta, stated that the minor presents a case of high consecutive intracraneal blood pressure, the result of the brain shock suffered by him due to the blow which produced the fracture of the skull; that said case with that symptomathology in the form of epileptic fits is what is known as Epilepsia Jacksoniana or traumatic epilepsy; that the injury suffered by the minor "renders him permanently and totally disabled for work and for many things in life."

Dr. Luis de la Vega, a physician with 26 years of practice and Head of the Medical Division of the National Selective Service, testified, after having been informed as to the nature of the injuries and clinical history of the minor, that when it is ascertained that the person suffers from epileptic fits, then said person is classified with the letter "F," which means "final and total rejection," that is, that he is completely disabled for military service.

To the same effect as Dr. Boneta, Doctors Godines and Vadi testified, and they classified the case as one of Jacksonian or traumatic epilepsy.

When determining the amount of the compensation the lower court expressed itself thus:

"Bearing in mind the nature of the injuries suffered by Herminio Colón, his age, the uncontradicted testimony of the medical experts that he was suffering from epileptic fits as a consequence of the blows received, the nature of said malady whose course is very uncertain, its treatment being very long and often indefinite, prolonging itself for the life of the patient, who is in danger of losing his mind, and all the evidence offered, we are of the opinion that the defendant Government of the Capital must pay said Hermonio Colón for the damages suffered, the amount of $6,000. (See *Reid* v. *New York & New Jersey Telephone Co.,* 135 N. Y. Supp. 846; *St. Louis, I. M. & S. Ry. Co.* v. *Tromlinson,* 94 S. W. 613.)"

Considering all the circumstances of the case, and especially the age of the injured boy, and the fact that for the rest of his life he will be an epileptic, we are inclined to believe that the sum of $6,000 is a just and reasonable compensation to the minor for the damage suffered.

5. Both the appellant municipality and the plaintiff complain of the exoneration of the insurance company. Whether the court erred or was justified in ordering it, is the last question to decide.

The insurance policy offered in evidence by the plaintiff contains, among others, the following stipulations and terms:

"II. Besides, the Company shall investigate all accidents and claims covered by this Policy, and in the name and in representation of the Insured, it shall defend all actions that may be brought based on said accidents and claims, no matter whether said actions are frivolous (*infundados*) provided said actions are notified as is further on provided; . . .

"SUBJECT NEVERTHELESS TO THE FOLLOWING TERMS

"A. Notice must be served immediately in writing to the Principal Office of the Company or its Authorized Agent of any accident, claim, or action derived from said accident with all the summons, being nevertheless provided that the failure to serve said immediate notice shall not annul any claim made by the Insurer, provided it is shown that it was reasonably impossible to furnish such notice immediately and that it was served as soon as it was reasonably possible. In the event that the Company so desires, the Insured must help to find information, evidence, and assistance from witnesses; and also he shall always give the Company all the cooperation and help reasonably possible."

The lower court, after analyzing the evidence offered by the insurance company, to prove the lack of compliance of the insured municipality with the terms of the policy, arrived at the following findings, which in our judgment, are sustained by the evidence.

"Although it is true that the insurer was not notified of the accident, it is no less certain that the first notice that the same

had of the existence of this action was in July of the year 1940, when the attorney for plaintiff, José Soto Rivera, Esq., informed it personally first and by writing later, and that from December 13, 1938, date at which the complaint was filed, until August 7, 1940, when the insurer was summoned on having been joined as party defendant and even at the date set for trial the codefendant, Government of the Capital of Puerto Rico, had failed to serve notice to the insurer in any manner or way of the existence of the present action, notwithstanding the fact that said codefendant, Government of the Capital, had had knowledge of the existence of said action since December 29, 1938, date on which it was summoned, from which date it has appeared to defend itself represented by its attorney not only before this Court but also before the Supreme Court of Puerto Rico.''

The non-compliance on the part of the Government of the Capital with the terms of the policy was clearly established. Two years and one month elapsed from the time of the filing of the original complaint to the date set for the trial, during which time the Government of the Capital made not the least effort to serve the insurance company with the summons and the complaint or to demonstrate that it had been ''reasonably impossible'' to comply with the contractual obligation. It is a firmly established doctrine that the obligation to serve notice on the insurance company of the occurrence of an accident and to deliver the summons and the complait filed against the insured, is an essential part of the insurance contract; that its compliance is a condition precedent to the right of the insured to demand the responsibility of the insurer; and that the violation of said condition annuls the policy. See note in 76 A.L.R. 23 *et seq.; Quiñones* v. *''L'Unión,''* 34 P.R.R. 388; 106 A.L.R. 516, 532.

In *Buxó* v. *Aetna Casualty & Surety Co.*, 48 P.R.R. 180, in which the facts were almost identical with those of the instant case, Buxó, owner of an insured omnibus, was sued by García, and was ordered to pay the latter compensation amounting to $2,000. Buxó paid the judgment and sued the insurance company. The latter raised as a defense the fail-

ure of the insured to comply with the terms of the policy, which were identical with those in the instant case. It was proved that the insured did not deliver the complaint to the company until 24 days after having been summoned. The company was released by this court with the following words:

"An analysis of the evidence fails to show, in our opinion, that the plaintiff properly complied with the stipulations of the policy for the purpose of placing the company, in due time, in the best position for taking charge of the defense of the action for damages."

And in *González* v. *U. S. Casualty Co.*, 55 P.R.R. 646, which presented analogous circumstances to those of the case at bar, we exonerated the company for the reason that it had been notified of the action after the insured had filed his sworn answer to the complaint.

▮ The defense of failure to comply with the above-named terms by the insured can be raised by the insurance company not only against the insured but also against the claimant for damages suffered in an accident covered by the policy. The injured party occupies the same legal position as the insured except in case of collusion between him and the insured. See the monograph in 106 A.L.R. 516 to 532 and *González* v. *U. S. Casualty Co.*, *supra*. The claimant for damages can be protected against said defense by notifying the insurance company of the occurrence of the accident, joining it as party defendant when filing his action and summoning and serving it with copy of the complaint. Plaintiff in the instant case failed to do so, and therefore, the insurance company could raise against him the above stated defense.

Our decision in *Rondón* v. *The Aetna Casualty & Surety Co.*, 56 P.R.R. 418, cited by appellant, does not apply to the facts in the instant case. In the *Rondón* case, the compulsory insurance of an omnibus dedicated to the business of passenger transportation authorized by the Public Service Commission was involved; and we decided that the doctrine fol-

lowed in the case of *González* v. *U. S. Casualty Co.*, *supra*, is of application only to cases in which the policy has been voluntarily made and not to those in which the insurance is compulsory by virtue of statutory provision.

In the instant case, our attention has not been called to any insular law or municipal ordinance by virtue of which the Government of the Capital is obliged to insure the automobiles it uses in the municipal services.

The lower court did not err in releasing the United States Casualty Company from all responsibility.

For the reason stated the judgment appealed from is affirmed.

ON MOTION FOR RECONSIDERATION

MR. JUSTICE TRAVIESO delivered the opinion of the court.

Juan Valldejuli Rodríguez, Esq., attorney for the Government of the Capital of Puerto Rico, has filed a motion before this court, asking for the elimination of certain statements we made in the opinion delivered by this court in the above-entitled case.

The elimination is asked of the paragraph that reads as follows:

"The legal representative of the defendant municipality consented to and was served with copy of the amended complaint in due time. *It was his unavoidable duty to plead to said complaint within the term of ten days granted him by the law, and he failed to do so. He chose to abandon the defense of the taxpayers who pay him to defend their interests, failing, first, to notify the insurance company in compliance with the terms of the policy, later allowing a default to be entered against the municipality, without making*

*any effort whatsoever to dissolve it, and failing to appear at the trial, as he should have done, to defend his client against the adverse interests of the plaintiff who claimed a large indemnity, and of the insurance company which alleged it had been released from all responsibility due to the violation by the municipality of the terms of the policy."*

The reasons stated to sustain the petition are in short as follows:

(*a*) That the appearing attorney was not the one who was in charge of conducting the action when the insurance company was joined as a party defendant; and that the Government of the Capital entrusted its defense to the insurance company in accordance with the policy.

(*b*) That it does not appear from the record that the appearing attorney was the one to be in charge of the said action at the time the insurance company was joined as a party defendant.

(*c*) That the appearing attorney had no notice or knowledge that the automobile which caused the accident was insured; and that the duty of notifying the company did not rest on him as a professional duty.

(*d*) That said attorney did not know that there were conflicting interests between the company and the municipality, neither the latter nor its attorney having been notified as to that circumstance; and that the attorney could not proceed to answer a third amended complaint in an action which had not been entrusted to him.

(*e*) That it does not appear from the record that default had been entered against the municipality.

The petition for the elimination of the above-transcribed paragraph is improper and is dismissed for the following reasons:

From the moment the Government of the Capital was served with notice of the original complaint filed against it by Herminio Colón up to June 6, 1940, on which date, by order of this court, the case was remanded to the district

court for further proceedings, the defense of the Government of the Capital was in charge of Juan Valldejuli Rodríguez, Esq. See P.R.R. 15.

From the record of the case filed before this court, it appears that on August 1, 1940, plaintiff, with leave of court, and without objection from the defendant, filed a third amended complaint, joining as party defendant the insurance company. A copy of said complaint was served on Mr. Valldejuli, who signed the notice; that on September 28, 1940, José López Baralt, Esq., attorney for the insurance company, filed, in the name of the Government of the Capital and of the company, a demurrer to the third amended complaint; that on the thirtieth of that same month, Attorney López Baralt filed a motion withdrawing said demurrer as to the Government of the Capital, because the same had been filed "by error of the undersigned attorney, who had not been authorized by the Government of the Capital of Puerto Rico to file said demurrer and also, as he had not been authorized or instructed by the U. S. Casualty Co. to file said demurrer in the name of the Government of the Capital of Puerto Rico" and expressly stating "that the Government of the Capital of Puerto Rico is represented in this action by Juan Valldejuli Rodríguez, Esq."; that the motion to which we have just referred to was notified with copy to Mr. Valldejuli, who received it and accepted the copy, signing it as attorney for the Government of the Capital; that the motion was granted as of November 4, 1940, and the 7th of that same month the company filed an answer to the complaint raising, among others, the defense of violation of and non-compliance by the insured municipality with the terms of the policy.

From the moment that the motion to withdraw the demurrer was filed by the company, which was sufficient notice that the company was not going to assume the defense of the municipality, was notified to him, the record does not show that the attorney for the municipality made any effort to defend the interests entrusted to him.

It is true that from the record it does not appear that default was entered against the municipality for having failed to plead against the third amended complaint Nevertheless, the essential fact is that notwithstanding the conflict of interests existing between the company and the Government of the Capital, the attorney for the latter failed to answer a complaint, failed to appear at the trial, in spite of the fact that he had been summoned, and left his client without any legal representation whatsoever.

The allegation raised by the attorney petitioner that the representation of the municipality had been assumed by and entrusted to the insurance company lacks merit, as the facts stated show the contrary.

Attorney Valldejuli appeared from the record as attorney of record, up to the date on which the insurance company notified him of the motion withdrawing the demurrer. According to Rule 27 of the district courts and the rules of this court, the attorney of record is the one who has appeared in the action signing all the allegations, and said attorney shall be considered as such, unless something to the contrary appears from the record. See *Garriga* v. *Medina,* 42 PRR 746, and *Claudio* v. *Palacios,* 29 PRR 768.

The allegation of the petitioning attorney that when he took charge of the defense of the municipality in the case, he had no knowledge that its automobiles were insured is not very convincing. Conceding that the attorney for the municipality did not know that the municipal automobiles were insured, it is an elementary precaution to be taken by every attorney for the defendant in an action for damages caused by an automobile, to make certain whether his client, the owner of the vehicle, is covered by an insurance policy. And if it be so, his professional duty in that case is to study the policy and take the necessary steps required by the terms of the insurance contract, in order that the insured may have the full benefit of his policy. Nothing like that was done by the attorney for the defendant municipality in the case at bar.

42

 Nor will we grant the motion to strike the paragraph in our opinion in which we criticized the practice of imputing to the judge of the lower court passion, prejudice, and partiality without having the least basis to justify such a grave imputation. In the case at bar that imputation was made to Judge La Costa, Jr., not only as to the case at bar, but also as to corporations in general, and especially the Government of the Capital. No justification whatsoever appears from the record for said imputation. For that reason, we consider the practice of making such imputations when there is not even a sign or a reason to sustain them, an unfounded and reprehensible one.

It is the inescapable duty of this court to see that attorneys, who are officers of the court comply strictly with their professional duties. When commenting on or criticizing the conduct of attorneys who appear of record, we are not moved by the least purpose to annoy, offend, or prejudice in any manner whatsoever the attorney, who for one reason or another, did not strictly comply with his duties towards his client. All attorneys have and deserve our respect and consideration, but we would fail in our duty if we should let pass, without criticism, situations like the one appearing from the record in this case.

The motion must be dismissed.

Mr. Chief Justice Del Toro did not participate herein.