ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* TOMLINSON.

Opinion delivered March 24, 1906.

1. RAILROAD—DUTY TO SIGNAL AT CROSSING.—Where a road which crossed a railway track, though not a county road, had been used by the public for many years, and the railway company had built a crossing over

its track, it was such a road as the company was required, by Kirby's Digest, § 6595, to give signals at its crossing. (Page 260.)

2. SAME—DUTY TO KEEP LOOKOUT ON BOTH SIDES OF TRACK.—Where, on account of a curve in the track, it was necessary for a lookout to be kept on both sides of the track, negligence on the part of the railway company is not disproved by showing that a lookout was kept on one side. (Page 260.)

3. INFANT—CONTRIBUTORY NEGLIGENCE.—A child of tender years, traveling in a wagon with his father and elder brother, is required to exercise only such care and caution as is according to his maturity and capacity; and whether he does so in any particular instance is a question for the jury. (Page 260.)

4. RAILROAD CROSSING—DUTY OF TRAVELER TO KEEP LOOKOUT.—It was not improper to instruct the jury that it is the duty of a person about to cross a railway to look both up and down the track, and to listen for trains from each direction, and that, if it appears to him, as a reasonably prudent person, that the greater danger is to be apprehended from one of the track than the other, he may give greater attention to that end. ( .Page 261.)

5. SAME—LOOKOUT IN CASE OF APPREHENDED DANGER.—While it is the duty of a person about to cross a railroad track to look both up and down the track, and to listen for trains from each direction, yet if it appears to him, as a reasonably prudent person, that the greater danger is to be apprehended from one direction than from the other, he may give more attention to that end of the track from which the greater danger is apprehended. (Page 261.)

6. DAMAGES—PHYSICAL AND MENTAL SUFFERING.—In an action against a railroad company for injuries to an infant received in collision at a crossing, evidence that, by reason of defendant's negligence, plaintiff received serious injuries which had permanently affected his health, including his eyesight, and which might destroy his mind, was sufficient to sustain a verdict for $15,000 damages. (Page 261.)

Appeal from Independence Circuit Court; *Frederick D. Fulkerson,* Judge; affirmed.

*B. S. Johnson,* for appellant.

1. The injury resulted, not from any negligence on the part of the defendant, but from the contributory negligence of the plaintiff.

2. The 4th and 5th instructions, given at request of plaintiff, were erroneous. Where plaintiff's own evidence shows negligence on his part contributing to his injury, the burden is not on defendant to show it. 48 Ark. 130; 61 Ark. 556; 46 Ark. 193.

The 7th instruction was erroneous.  54 Ark. 431; 61 Ark. 549; 62 Ark. 156; 65 Ark. 235; 69 Ark. 135.

3.  The court erred in refusing to declare the law as asked by defendant.  As to the sixth instruction asked for, see 56 Ark. 433; 69 Ark. *supra; Ib.,* 489.  Negligence of the company's employees as to rate of speed, or in failing to sound the whistle or ring the bell, does not relieve the traveler from the necessity of taking ordinary precautions for his safety.  54 Ark. 431; 59 U. S. 697; 114 U. S. 615; 12 L. R. Q. B. Div., 70-73; 3 App. Cas. 1155.  The Magness Spur road crossing was not a public highway, within the meaning of the statute.  Kirby's Digest, § 7223.  See, also, 45 N. E. 675; 80 Ky. 138.

*W. A. Oldfield, S. D. Campbell* and *W. S. Wright,* for appellee.

1.  The defendant was negligent in this:  In failing to sound the whistle or ring the bell at any time for either of the three crossings, and in failing to keep the lookout required by Kirby's Digest, § 6607.  Under the circumstances the duty was on the fireman to keep the lookout.  57 Ark. 194; 62 Ark. 186; 63 Ark. 184.  Defendant was also negligent in having in charge of the locomotive an engineer and fireman rendered incompetent and unskillful for want of necessary rest.  Kirby's Digest, § § 6652, 6654; 13 Pet. 181.

There was no such negligence on the part of plaintiff as would bar his recovery.  The train that caused the injury was a special, coming at an unusual hour, and of which plaintiff had no warning, and under the circumstances the driver had the right to give greater attention to that end of the track from which, as a reasonably prudent person, he might expect the greater danger.  55 Ark. 248; 57 Ark. 306; 10 Am. Rep. 330; 25 Am. Rep. 162 and notes.  The negligence of the driver, if any, should not be imputed to plaintiff.  58 Ark. 454; 59 Ark. 180; 43 Ohio St. 91; 84 Fed. Rep. 586.  The care and caution of a child is according to his maturity and capacity, and whether he exercised the care required of him under these circumstances was for the jury.  33 Ark. 372; 53 Ark. 128; 60 Ark. 549; 71 Ark. 55; 41 Am. St. Rep. 786; 17 Wall. 657; 53 Am. St. Rep. 641; 84 Fed. 586.

2.  When plaintiff made out a *prima facie* case by proving his injury to have been caused by operation of the train, and

without disclosing negligence on his part, contributory negligence was an affirmative defense, and the burden was on the defendant to show it by a preponderance of evidence.   125 Fed. 187; 48 Ark. 348; 46 Ark. 193.

3.   Appellant was not prejudiced by the court's refusal to give instructions as asked by it.   Nos. 6 and 11 were fully covered by other instructions given.   No. 13 was properly refused, because the duty to whistle or ring the bell is not limited to public county roads (Kirby's Digest, § 6595), and because the Magness Spur road had been continuously in use by the public over twenty years, and defendant had constructed and maintained the crossing. 47 Ark. 436; 50 Ark. 57.

Battle, J.   This action was instituted by Enos J. Tomlinson, by his next friend, W. H. Tomlinson, against the St. Louis, Iron Mountain & Southern Railway Company.   Plaintiff alleged in his complaint that "he was a minor, eleven years of age; that while he was being driven across the railroad at Magness Station in a wagon, the defendant negligently, wantonly and recklessly ran its engine against the wagon; that the defendant negligently failed. to ring the bell or sound the whistle of its engine for the crossing; that its employees negligently failed to keep a lookout for persons and property at the crossing; that the engineer and fireman were unskillful and incompetent, and at said time were in a state of intoxication; that, though able to avert the danger of plaintiff after discovering same, said employees failed and neglected to do so; that, as a result of the engine being run against the wagon, the plaintiff was thrown out of the same, and his brain, eyes and vision were injured, to his damage in the sum of $20,000."

The defendant answered, and specifically denied all the material allegations in plaintiff's complaint, and alleged that his injuries were caused by his own contributory negligence.

The jury in the case returned a verdict in favor of the plaintiff for $15,000, and the defendant appealed.

The jury might have found from the evidence adduced at the trial in this action the following facts:   "A special train, called a pay train, was run out of Poplar Bluff, Mo., and from Newport up the White River Branch, a considerable distance above Batesville, Ark., and on its return, at or about Batesville,

the locomotive engine broke down and became what is called a dead engine. * * * Upon the disabling of the engine, another engine and crew were wired for, and the same were sent from Newport to the relief of the special train. * * * This relief engine was attached to the special pay train at Batesville, early on the morning of October 17, 1902, and proceeded towards Newport, and about seven o'clock in the morning, much earlier than any regular train was due at Magness Station, struck the wagon in which plaintiff was riding.

"A train going from Batesville towards Newport, before reaching Magness Station, would pass the 'Oak Grove Crossing,' about a mile and a half before reaching Magness, then after a considerable distance would pass the 'Military Road Crossing' (a county road), then after going 370 yards would pass the 'Newark and Batesville Road Crossing' (a county road), and then, after going through a cut 75 yards long, would pass over a trestle and then over the Magness Public Crossing, where the collision occurred. (This road, although it had not been established by the county court, was used by the public more than the other two roads, and had been so used by the public for about twenty years, and defendant railroad company had put the crossing in there.) * * * Neither the whistle was sounded, nor the bell rung, nor other warning was given for either of these three crossings at or about the time of the collision. * * * In going out of the cut and approaching Magness Crossing, there was a slight curve toward the left, on account of which the engineer, on the right-hand side, while keeping a lookout ahead, could not see the wagon in which plaintiff was riding, while it was on or approaching the track from the left-hand side. The fireman, being on the left-hand side, the best position to make the lookout effective, was not keeping a lookout. * * *

"If the statutory signals had been given for either of the three crossings named, such warning could have been heard, and the collision and injury might have been averted. If the fireman, being on the inside of the curve and in position to make the lookout most effective, had been keeping such lookout, he would necessarily have seen the wagon approaching, not only in time to have given effective statutory warning, but also in time to have caused the train to come to a full stop before reaching the

Magness Crossing, where the collision occurred.   *   *   *

"Plaintiff was a boy about eleven years of age, riding in the wagon, which was driven by his brother, Ed Tomlinson, and his father, W. H. Tomlinson, was standing in the rear end of the wagon, and he was standing between the two. The driver, Ed Tomlinson, when about twenty feet from the track, looked up the track toward Batesville, and, seeing no train and hearing no bell or whistle sounded, drove on, and attempted to cross the track, at the same time looking down the track towards Newport, from which direction a gravel train was expected about that time. Just as the driver was driving his wagon across the track, the special train at an unusual hour for trains from that direction, and at an unusual speed for trains upon that road, and without any warning or statutory signal, and without any lookout on the left side, where, on account of the construction of the track, a lookout would be most effective, struck the wagon, knocking the plaintiff out and injuring him.

"The plaintiff, by the collision and fall, had his skull broken, the fracture being about one inch to the right of the middle line of the skull, on the posterior part of the frontal bone, and being about one inch by its shortest diameter, and about an inch and a quarter by its longest diameter. He was rendered unconscious by the fall, and remained so for about 18 hours. Doctors operated upon him. By the fall a piece of bone was driven upon his brain, lacerating and puncturing the dura mater, a membrane forming the outer covering of the brain. This piece of bone, together with other pieces, was removed by the operation called trephining, and the hole in the skull, remaining after the operation, was described by the doctors who operated upon him as being about the size of a silver half-dollar. After the operation the boy remained semi-unconscious for five or six days. Upon the healing of the wound, an adherent, depressed scar remained, and the aperture was partially closed with a cartilaginous substance, and from the edges of the old bone and below the natural level, there appears to be a very slight and slow growth of a harder material which may perhaps in time become bone, and make progress towards closing the aperture with bony substance, which, if it does take place, will be below the level of the old bone, and produce

permanent pressure upon the brain. Before the injury the boy was subject to headache about once a month, and since the injury he has been subject to headache twice a month, and the spells are of longer duration. Before the injury he was fairly intelligent for a child of his age, learned with average rapidity, was good-natured and even-tempered, obedient to his parents and industrious; whereas since the injury he has been dull and slow of perception, disobedient, hard to control, quick-tempered, easily irritated and forgetful. Before the injury the boy's eyes and vision seemed to be normal, but since he at times appears to see two objects when looking at only one object.

"According to expert testimony adduced in the case, 'the future mental development of the boy will necessarily be one-sided, and the injury may produce epilepsy, insanity, or even idiocy; and the injury has caused a periodical double vision, which doctors call diplopia.' "

The court instructed the jury at the request of plaintiff, over the objection of the defendant, as follows:

"4. If the plaintiff shows by a preponderance of the evidence that he was injured by the operation of defendant's train, it is presumed that the injury was negligent, unless shown not to be negligent, and the burden in such cases is upon the defendant to show that the injury was not the result of such negligence upon its part.

"5. You are instructed that the burden of proof is upon the defendant to show by a preponderance of evidence in the whole case that the plaintiff was guilty of contributory negligence.

"7. You are instructed that while it is the duty of a person about to cross a railway track to look both up and down the track, and to listen for trains from each direction, yet if it appears to him before crossing, as a reasonably prudent person under the surrounding circumstances, that greater danger is to be apprehended from one end of the track than the other, he may give more attention to that end of the track from which he as a reasonably prudent person under all the circumstances apprehends the greater danger."

And the court refused to give the following instructions at the request of the defendant:

"6. Where the view of a railroad track is obstructed, and the danger of a road crossing is thus increased, a greater degree of care is required of one about to cross the railroad track than would be his duty to exercise at a crossing not particularly dangerous; but a traveler upon a railroad is bound to exercise ordinary care and diligence at the intersection of a railroad by looking and listening in both directions in order to ascertain whether or not a train is approaching, and so avoid a collision; and if he fails to do so, and for that reason is injured, he is not entitled to recover.

"11. Even if you find that the employees in charge of defendant's train failed to give the signals for crossings by blowing the whistle or ringing the bell as required by law, or were otherwise negligent, your verdict will be for the defendant, if you find from the evidence that the plaintiff on approaching the crossing was himself guilty of negligence by failing to look and to listen in both directions for approaching trains, provided you also find from the evidence that by doing so he could have seen or heard the approaching train in time to have avoided the injury."

And modified and gave the sixth as modified as follows:

"6. Where the view of a railroad track is obstructed, and the danger of a road crossing is thus increased, a greater degree of care is required of one about to cross a railroad track than would be his duty to exercise at a crossing not particularly dangerous."

And gave the following at the request of the defendant:

"2. You are instructed that an ordinarily prudent person, before attempting to cross a railroad, will use his eyes and ears in order to determine whether or not he can safely do so; and if the circumstances require it, as where the view of a railroad is obstructed, he will stop in order to see and hear more clearly. If a traveler neglects to do what an ordinarily prudent person would do under the circumstances, such traveler is guilty of negligence and can not recover.

"3. You are instructed that the rule of law that requires a traveler on a road, on approaching a railway crossing, to listen and to look in both directions for an approaching train is not relaxed in favor of one being carried by a vehicle driven by another. It is the duty of a person riding in a wagon driven by

another to use his eyes and ears to discover danger, so that he may avoid it. In this case you are instructed that the plaintiff had no right, because his brother was driving the wagon, to omit taking reasonable and prudent precaution to learn for himself that the crossing was safe. He was bound to listen and look in both directions for approaching trains, and to continue to do so as he approached; and if you find from the evidence that he failed to listen and look in both directions for the train, your verdict will be for the defendant.

"4 The jury are instructed that the want of care on the part of a traveler in failing to look and listen for the approach of a train is not excused by the neglect of the employees in charge of the train either to keep a careful lookout on the track for persons and property, or to give the usual signals on approaching a crossing. If, therefore, you find from the evidence in this case that the plaintiff went upon the railroad track before listening and looking in both directions for an approaching train, and was for that reason injured, your verdict will be for the defendant, even though you should further find that the men in charge of the train failed to keep a careful lookout or to blow the whistle or to ring the bell on approaching the crossing.

"5. If the facts and circumstances in evidence in this case show that the plaintiff, at the time of the injury of which he complains, was in a dangerous position, and was where a prudent person would not have been under the circumstances, and that this fact directly contributed to his injury, then plaintiff will not be entitled to recover, unless the evidence shows that the employees in charge of the engine saw the danger the plaintiff was in in time to have prevented the accident by the exercise of ordinary care, and failed to exercise such care."

And modified the 8th and 10th instructions asked for by the defendant, and gave them modified as follows:

"8. The jury are instructed that if they find from the evidence in this case that the defendant was guilty of negligence, and that the plaintiff was guilty of negligence, your verdict will be for the defendant—and this covers every kind of negligence by plaintiff or defendant contributing to the injury—unless the evidence further shows that defendant's employees in charge of the engine became aware of the negligence of the plaintiff in time to

have avoided injuring him by the use of ordinary care and failed to exercise such care.

"10. If the plaintiff saw or heard, or by the exercise of reasonable care could have seen or heard, the approaching train in time to have avoided the injury by the exercise of reasonable care, and failed to exercise such care, then he can not recover."

It is contended that the appellant was guilty of no negligence at the time of the accident. But this is not true. There was evidence to show that it failed to sound the bell or whistle at any time before reaching any of the public crossings near the place of appellee's injury, and at the same time failed to keep a proper lookout. It is true that the Magness Crossing was not a place where a road, laid out, constructed, repaired and maintained at the expense of the county, crossed the railroad, but a road crossed there which had been used by the public for about twenty years, and appellant had made the crossing; and it is such a crossing as the statute refers to when it requires railroad companies to ring the bell or to sound a whistle at the distance of at least eighty rods from the place where the railroad shall cross any other road or street, and to keep ringing the bell or sounding the whistle "until it shall have crossed said road or street." Persons traveling over same belong to the class intended to be protected by the statute. It may be true that the engineer on the train was keeping a lookout on the right-hand side of his engine when the accident complained of in this action occurred, but this was not sufficient. It was also necessary to keep a lookout at that time on the left-hand side on account of the curve in the road to protect persons traveling over the Magness Crossing. *Railroad Company* v. *Chriscoe,* 57 Ark. 194; *St. Louis Southwestern Railway Company* v. *Russell,* 62 Ark. 186; *St. Louis, Iron Mountain & Southern Railway Co.* v. *Denty,* 63 Ark. 184.

The injury to appellee might have been avoided by complying with the statutes requiring signals to be given and a lookout to be kept.

But it is said that appellee was guilty of contributory negligence. At the time he was injured he was about eleven years old, and was traveling in a wagon with his father and an elder brother. It was natural for him, on account of their age and experience, to rely upon them for protection. He was required to

exercise only such care and caution as is according to his maturity and capacity. Whether he did so was a question for the jury to decide. *Little Rock & F. S. Ry. Co.* v. *Barker,* 33 Ark. 372; *Davis* v. *Railway Co.,* 53 Ark. 128; *Brinkley Car Co.* v. *Cooper,* 60 Ark. 549; *King-Ryder Lumber Company* v. *Cochran,* 71 Ark. 55.

Appellant insists that the court erred in giving to the jury the instructions numbered 4 and 5 at the request of appellee, because, he says, they took from the jury the consideration of all evidence on the part of appellee showing contributory negligence. But this defect was covered by the instructions numbered 2, 3, 4, 5 and 12, given at the request of appellant, and modified instructions numbered 8 and 10. In every case in which they could have been prejudicial, so far as we can see, the jury were properly instructed as to what they should do. Prejudice was further guarded against by the instructions of the court to the jury to consider all the instructions given to them together and as a whole.

We see no reasonable objection to the instruction numbered 7 given at the request of the appellee. In that instruction the jury were told that it is the duty of a person about to cross a railway to look both up and down the track, and to listen for trains from each direction, and that, if it appears to him, as a reasonably prudent person, that the greater danger is to be apprehended from one end of the track than the other, he may give more attention to that end of the track from which he apprehends the greater danger. The instruction does not relieve such person of the duty to look and listen in both directions, but says that he may give more attention to the end of the track from which the greater danger is apprehended. This is reasonable, and in accordance with that prudence and care an ordinarily prudent person would exercise.

So much of instruction numbered 6, asked for by appellant, as was not given was supplied by instruction numbered 7, given at the request of appellee, and instructions numbered 2, 3 and 4, given at the request of appellant.

The instruction numbered 11, asked for by appellant and refused by the court, was, so far as it is correct, covered by other instructions which were given.

The evidence is sufficient to sustain the verdict.

Judgment affirmed.