No. 95-3315

Gamma 10 Plastics, Inc.,         *
                                 *
        Appellant,        *
                                 *     Appeal from the United States
    v.                     *     District Court for the
                                 *     District of Minnesota.
American President Lines, Ltd.;   *
American President Companies,     *
Ltd.,                         *
                                 *
        Appellees.        *

Submitted:  October 25, 1996

Filed:  January 22, 1997

Before WOLLMAN, ROSS, and MURPHY, Circuit Judges.

WOLLMAN, Circuit Judge.

Gamma 10 Plastics, Inc., (Gamma 10) appeals the district court's[1] denial of its motion for a new trial, contending that the district court rendered erroneous jury instructions.  We affirm.

**I.**

In 1988 Gamma 10 entered into a contract with American President Lines, Ltd., (APL) a large steamship carrier.  APL was to transport four separate shipments of Gamma 10's plastic resin from the United States to various ports in China.[2]  Upon receipt of the

---

[1]The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

[2]The first shipment of five containers was shipped to Whampoa, China; the second shipment of five containers was shipped to Shanghai, China; the third shipment of six containers was shipped to Hong Kong; and the fourth shipment of four containers was held in Los Angeles.

resin from Gamma 10, APL was to issue "through" bills of lading, meaning that APL would be responsible for the goods until they were received by the consignees in China.

Prior to shipping, the plastic resin was packed in bags, placed on wooden pallets, and covered with shrink-wrap plastic.  The wrapped resin was then placed in sealed containers for shipment.  The contract provided that these containers were to remain sealed until receipt by the consignee.

The consignees for the first two shipments notified Gamma 10 that they were having trouble locating the goods at the designated ports in China.  Because of the problems in locating the first two shipments, Gamma 10 instructed APL to hold the third and fourth shipments in the United States.  The third shipment, however, was mistakenly sent to China.  When the first two shipments were located, the goods had been "devanned" -- removed from their containers -- and as a result, the resin was contaminated.  Gamma 10 claimed that due to APL's alleged devanning of the first two shipments and its failure to make timely delivery of the goods, Gamma 10 lost buyers for the resin, but was eventually able to resell all four shipments at a lower price.

In July of 1990, Gamma 10 filed suit in Minnesota state court.  It alleged negligent or intentional misrepresentation and that APL was negligent in shipping, handling, storing, tracking, and protecting Gamma 10's goods, which Gamma 10 claimed was also in breach of their contract. APL removed the case to federal district court.  The district court granted partial summary judgment to Gamma 10 on APL's affirmative defense of limitations.  After a five-week trial, the jury returned a verdict in favor of Gamma 10 for $500,000.  <u>Gamma 10 Plastics, Inc. v. American President Lines,</u>

Ltd., 839 F. Supp. 1359 (D. Minn. 1993).

Gamma 10 appealed the trial court's refusal to allow it to amend its pleadings to claim punitive damages and refusal to instruct on punitive damages. APL cross-appealed the district court's partial summary judgment in favor of Gamma 10. We affirmed the district court's ruling that claims on the second, third, and fourth shipments were not time barred. Gamma 10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244 (8th Cir.), cert. denied, 115 S. Ct. 1270 (1995). However, we reversed as to the first shipment to Whampoa, China, finding that the dispute arising over that shipment was time-barred.[3] We also reversed the district court's holding that Gamma 10 could not amend its pleadings to include a claim for punitive damages and remanded for a new trial.

A second trial commenced on April 10, 1995. The jury returned a special verdict on June 7, 1995, in which it found for APL. Gamma 10 moved for a new trial, alleging that the verdict was against the weight of the evidence and that there were erroneous evidentiary rulings and erroneous jury instructions.

## II.

Gamma 10 appeals the denial of its motion for a new trial only on the ground that the district court's jury instructions regarding "proper delivery" were erroneous.[4] Gamma 10 advanced three theories of how the containers were devanned. One theory was that the Chinese port authority devanned the containers; a second theory was that APL devanned the containers once the shipment reached

---

[3]Because we held in the first appeal that the claim on the first shipment to Whampoa was time-barred, that shipment was not at issue in the second trial, nor is it in this appeal.

[4]APL contends that Gamma 10 waived this argument, and that in any event it is precluded by the "law of the case" doctrine. In light of our disposition, we need not address these arguments.

Shanghai; a third theory was that APL devanned the cargo prior to its arrival in Shanghai. Gamma 10 argues that the instructions precluded the jury from finding APL liable on this third alternative.

Gamma 10 contends that in order for the jury to be able to find liability based on the third theory, the word "containerized" (as indicated in brackets) should have been included in Instruction No. 21:

> The bills of lading in this case were through bills requiring delivery to a party in possession of an original bill of lading, the consignee. Therefore, in this case the duty of proper delivery required American President Lines either to deliver the [containerized] cargo to the consignee or to deliver it to a fit wharf and to take reasonable steps to safeguard it until the shipper or the consignee had a reasonable opportunity to claim the cargo. But if you find that APL proved by the greater weight of the evidence that (1) the Chinese port practices, customs, regulations, or laws required American President Lines to relinquish the cargo to a port authority; (2) APL in fact delivered Gamma 10's [containerized] goods into the custody of the port authority; (3) APL acted at all times in compliance with the port law and port regulations of the foreign port; and (4) the loss or damage was accomplished while the goods were in the custody of foreign port authority officials, then American President Lines is not liable for any damage or loss that occurred after the port authority took possession.

Gamma 10 makes the same argument with regard to Instruction No. 21a:

> I instruct you that proper delivery was also made if you find that (1) Sinotrans and PENAVICO are government-controlled agencies acting in an official capacity and outside of the agency or control of APL; (2) APL was required by law or port practices to relinquish the cargo to either agency; (3) APL delivered the [containerized] cargo into the custody and control of either agency; (4) APL and its agents acted at all times in compliance with port law and port regulations of the foreign port; and

(5) the loss or damage was accomplished while the goods were in the custody of either Sinotrans or PENAVICO.

Gamma 10 argues that to absolve APL from liability, the jury had to find not only that the goods reached the Chinese ports, but also that they were in their containers when delivered.  Gamma 10 contends that the instruction as given, without the word "containerized" did not permit the jury to find APL liable as long as the goods were ultimately delivered, in whatever state.

### III.

In determining whether a jury instruction is proper, we keep in mind that the district court has "`wide discretion'" in drafting jury instructions.  Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 977 (8th Cir. 1995) (quoting Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 906 F.2d 1206, 1212 (8th Cir. 1990)) (citation omitted).  We must read the jury instructions as a whole and look at the instruction at issue in light of the entire charge.  National Automotive Trading Corp. v. Pioneer Trading Co., 46 F.3d 842, 844 (8th Cir. 1995) (per curiam).  Our review of jury instructions is confined to whether the instructions "fairly and adequately present the issues in the case to the jury."  Hose, 70 F.3d at 977.  As long as "`the instructions, considered as a whole, adequately and sufficiently state the generally applicable law, the fact that the instructions are technically imperfect or are not a model of clarity does not render the charge erroneous.'"  National Automotive, 46 F.3d at 844 (quoting Tribble v. Westinghouse Elec. Corp., 669 F.2d 1193, 1197 (8th Cir.), cert. denied, 460 U.S. 1080 (1983)).

We conclude that when read in their entirety, the instructions were not erroneous.  They did not preclude the jury from finding APL liable on Gamma 10's theory that APL devanned the goods before their arrival in Shanghai, but rather required the jury to consider

-5-

that possibility.

Instruction No. 21 required the jury to find all four of the elements of proper delivery in order to absolve APL from liability. The proper delivery instruction is written in the conjunctive, plainly stating that only if the jury found all four elements, could it find for APL. The fourth element in the proper delivery instruction required the jury to find that "the loss or damage was accomplished while the goods were in the custody of foreign port authority officials." Thus, this part of the instruction required that the jury make a determination of when and in whose hands the devanning occurred.

Likewise, Instruction No. 21a required the jury to find that all five listed circumstances set forth therein existed before absolving APL of liability, which included a finding that "the loss or damage was accomplished while the goods were in the custody of either Sinotrans or PENAVICO." Thus, this instruction also required the jury to consider the circumstances surrounding the devanning of the cargo.

In addition, the jury was aware of Gamma 10's allegations: first, that APL devanned the containers prior to delivery to the Chinese port; second, that the devanning of the containers caused the resin to become contaminated; and third, that it was the contamination which ultimately resulted in Gamma 10's loss or damage. Therefore, if the jury had believed Gamma 10's allegation that APL devanned the goods prior to arrival at the port, the jury would also have had to conclude that such devanning and the consequent loss or damage occurred when the goods were in the hands of APL. Thus, by making the finding that the loss or damage occurred in the hands of another party and ultimately concluding that APL was not liable, the jury necessarily considered that which Gamma 10 now contends the jury was not given the opportunity to consider -- whether APL devanned the goods prior to their arrival

-6-

at the Chinese port.

The proper delivery instruction, above, also plainly stated that the duty of proper delivery also required APL to "take reasonable steps to safeguard [the cargo] until the shipper or the consignee had a reasonable opportunity to claim the cargo." The court later instructed the jury that one of Gamma 10's theories of negligence was that APL had failed to safeguard by emptying the cargo. Thus, the jury was made aware that devanning the cargo would constitute a failure to safeguard the cargo. Such a failure would constitute improper delivery, which in turn would require the jury to find APL liable on Gamma 10's claim that APL devanned the containers prior to delivery.

Gamma 10 also contends that the trial court merely listed Gamma 10's allegations of negligence without instructing the jury as to how the allegations would lead to a finding of liability. Gamma 10's contention that the court provided no link to liability is unfounded. The court supplemented these allegations by instructing the jury that Gamma 10 would prove the essential elements of its claim if it showed that APL was "negligent in one or more of the particulars alleged in instruction 22," and that negligence was the "proximate cause of the injury and consequent damage sustained by Gamma 10." Moreover, the jury was asked on the special verdict form whether it found "that the defendants or their agents acted negligently in performing any one or more of the specific acts of negligence alleged by Gamma 10." Instruction No. 22 informed the jury that:

. . . .

2. American President lines or its agents failed to take reasonable steps to safeguard Gamma 10's cargo between September and December of 1988 by emptying the cargo from the sealed containers;

. . . .

4. American President Lines or its agents violated port law, port practices, and port regulations in China by devanning, or emptying, Gamma 10's goods prior to the arrival of a consignee[.]

Taken as a whole, these instructions clearly provided an avenue for the jury to find negligence based on Gamma 10's allegation that APL devanned the goods prior to their arrival in Shanghai.

Similarly, with regard to the breach of contract claim, the jury was informed of Gamma 10's allegations that APL had breached the contract by failing to properly deliver and safeguard, by devanning the containers prior to the consignees' taking possession, and by breaking the seals on the containers. Thus, the jury was fully apprised of Gamma 10's theory regarding breach of contract and was bound to find APL in breach of its contract if it concluded that Gamma 10's allegations were true.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.