United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 97-1597

_____

James Curtis Pittman, Co-Administrator  *
of the Estate of Joy Faye Pittman Ellis,  *
Deceased; Joyce Ann Pittman,  *
Individually and as Co-Administrator of  *   Appeal from the United States
the Estate of Joy Faye Pittman Ellis,  *   District Court for the
Deceased,  *   Eastern District of Arkansas.
 *
        Appellants,  *
 *
   v.  *
 *
Thomas A. Frazer, Jr.; Paul B. Smith;  *
Alvin L. Triggs; Union Pacific Railroad  *
Company,  *
 *
        Appellees.  *

_____

Submitted: September 11, 1997

Filed: November 4, 1997

_____

Before FAGG, WOLLMAN, and LOKEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

     This is an action for wrongful death brought under diversity jurisdiction, 28 U.S.C. § 1332, and governed by Arkansas law. Plaintiffs James Curtis Pittman and Joyce Ann Pittman (Pittmans), as co-administrators of the estate of Joy Faye Pittman

Ellis, and Joyce Ann Pittman, individually, appeal from the judgment entered by the district court[1] on a jury verdict in favor of defendants Thomas A. Frazer, Jr., Paul B. Smith, Alvin L. Triggs, and Union Pacific Railroad Company (hereinafter, collectively, "Union Pacific"). We affirm.

## I.

James H. Ball, Jr. and Ellis were involved in an adulterous affair during a period in which Ellis was experiencing marital difficulty. Apparently, Ellis had recently ended the affair and reconciled with her husband. Nevertheless, on April 11, 1995, Ball and Ellis drove to a secluded area on private property owned by Thompson B. Murray, Jr. in Cross County, Arkansas. After spending some time together there, Ball and Ellis left the Murray property. Ball was driving the automobile, which was owned by the Pittmans but used and controlled by Ellis. As he approached the crossing in question, Ball failed to yield and drove directly into the path of an oncoming Union Pacific train. The resulting crash killed Ball instantly. Ellis never regained consciousness and died shortly thereafter.

As administrators of their daughter's estate, the Pittmans brought a wrongful death action against Union Pacific and certain of its employees responsible for operation of the train. The suit alleged that the defendants were negligent in failing to properly sound the bell or whistle at the crossing, failing to maintain a proper lookout, and failing to maintain vegetation at a public crossing in accordance with Arkansas law.[2]

---

[1]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

[2]Union Pacific, in turn, argues that the district court should have entered judgment as a matter of law for Union Pacific on the Pittmans' claims. Although it is a close question, we conclude that the case was properly submitted for determination

**II.**

The Pittmans first argue that in denying their motion for judgment as a matter of law (JAML), the district improperly allowed the jury to consider the issue of whether Ball and Ellis were engaged in a joint enterprise. We review de novo a district court's denial of JAML, employing the same standard as that used by the district court. See Feltmann v. Sieben, 108 F.3d 970, 974 (8th Cir. 1997).

Under Arkansas law, a joint venture or joint enterprise exists between the driver and passenger of an automobile when each has (1) a community of interest in the object and purpose of the undertaking for which the vehicle is being used; and (2) an equal right to share in the control of the vehicle. See Krementz v. Raby, 959 F.2d 695, 696 (8th Cir. 1992). If a joint enterprise existed between Ball and Ellis, any contributory negligence of Ball would be imputed to Ellis and might operate to bar a recovery by the Pittmans against Union Pacific. See Hurley v. Peebles, 384 S.W.2d 261, 264 (Ark. 1964) (citing Restatement of Torts § 491 (1934)).

We disagree with the Pittmans that Arkansas law requires that the community of interest necessary to establish a joint enterprise be of a business or pecuniary nature. See Neal v. J.B. Hunt Transport, Inc., 805 S.W.2d 643, 645 (Ark. 1991) (unmarried couple returning from hospital after collecting family member); Bearden v. Arkansas Transport Co., 471 S.W.2d 748, 751 (Ark. 1971) (driver and passenger "having a good time, had been to a party together, were drunk, were not capable of driving an automobile safely, and were fixing to go to El Dorado, Arkansas (though the purpose of the trip was never mentioned)"); Langston v. Moseley, 265 S.W.2d 697, 698 (Ark.

---

by the jury. See, e.g., St. Louis Southwestern Ry. Co. v. White, 788 S.W.2d 483, 485-86 (Ark. 1990); Missouri Pac. R.R. Co. v. Rogers, 178 S.W.2d 667, 668-69 (Ark. 1944); St. Louis-San Francisco Ry. Co. v. Haynes, 5 S.W.2d 737, 738-39 (Ark. 1928).

1954) (drivers of automobiles attempting to unlock bumpers); Stockton v. Baker, 213 S.W.2d 896, 899 (Ark. 1948) (husband and wife traveling to visit wife's sisters).

Regarding the second element, we have noted that the Supreme Court of Arkansas has held that ownership of a vehicle by a passenger is sufficient to establish a jury question as to the right of the passenger to control an automobile driven by her spouse. See Ingersoll v. Mason, 254 F.2d 899, 902 (8th Cir. 1958). The essential question is "whether the parties can be found by implication to have agreed to an equal voice in the management of the vehicle, and in the normal and usual case is an issue of fact for the jury." RLI Ins. Co. v. Coe, 813 S.W.2d 783, 788 (Ark. 1991); see also Neal, 805 S.W.2d at 645.

Whatever the purpose the couple had in traveling to the Murray property, we believe the facts established a jury question regarding a community of interest in the object of their trip. Moreover, the automobile Ball was driving was used and controlled by Ellis, establishing an issue of fact on the element of mutual control. We conclude, therefore, that the district court did not err in denying JAML on the issue of joint enterprise. See id.; Krementz, 959 F.2d at 697; Ingersoll, 254 F.2d at 902-03.

## III.

The Pittmans next dispute the district court's refusal to rule that the railroad crossing at which the crash occurred was public in nature. This issue is pertinent because of Ark. Code Ann. § 23-12-201 (Supp. 1995), which provides in part:

> (a)(1)  All railroad corporations operating in this state shall maintain their right-of-way at or around any railroad crossing of a public road or highway free from grass, trees, bushes, shrubs, or other growing vegetation which may obstruct the view of pedestrians and vehicle operators using the public highways.

One of the theories of negligence alleged by the Pittmans was that Union Pacific negligently breached its duty to properly maintain the crossing in question, obstructing the view of Ball and Ellis and resulting in the crash.

Placing reliance on St. Louis, I.M. & S. Ry. Co. v. Tomlinson, 94 S.W. 613 (Ark. 1906), the Pittmans assert that because certain members of the public had previously been granted permission to utilize the road, the crossing was public in nature as a matter of law. The evidence indicates, however, that the crossing is private. It is located on a dirt road on private property and dead-ends at a private pond. The road is not maintained by any governmental authority and does not seem to have been the object of regular use by the public. Thus, the district court did not err in refusing to hold as a matter of law that the crossing was public in nature.

**IV.**

Next, the Pittmans assert that Arkansas Model Jury Instruction (AMI Civil 3d) 1801 was improperly submitted to the jury, as it constituted an inaccurate statement of Arkansas law. A district court has broad discretion in drafting jury instructions. See Gamma 10 Plastics, Inc. v. American President Lines, Ltd., 105 F.3d 387, 389 (8th Cir.), cert. denied, 1997 WL 457755 (U.S. Oct. 6, 1997). Jury instructions are to be read as a whole, and the instruction at issue is examined in light of the entire charge. See id. Our review is confined to whether the instructions "fairly and adequately present the issues in the case to the jury." Id. As long as the instructions, considered as a whole, adequately and sufficiently state the generally applicable law, the fact that they are technically imperfect or are not a model of clarity does not render the charge erroneous. See id.

Regarding Union Pacific's duty to sound its bell or whistle, the jury was instructed as follows:

> A railroad is required to place on each locomotive a bell or whistle, and these shall be rung or whistled at a distance of at least a quarter mile from where the tracks cross <u>any public road</u> and shall be kept ringing or whistling until the locomotive has crossed the road.

AMI Civil 3d 1801 (1989) (emphasis added).

The statute upon which this instruction is based provides, in pertinent part: "A bell . . . shall be placed on each locomotive or engine and shall be rung or whistled at the distance of at least eighty (80) rods from the place where the road shall cross <u>any other road or street</u>." Ark. Code. Ann. § 23-12-410 (1987) (emphasis added). The Arkansas Supreme Court has construed this statute as applying both to public and private roads. See <u>Haynes</u>, 5 S.W.2d at 739. It would appear, then, that AMI Civil 3d 1801 is unduly restrictive.

Whatever our view of the instruction, the Arkansas Supreme Court has approved its use. See <u>St. Louis Southwestern Ry. Co. v. Taylor</u>, 525 S.W.2d 450, 453 (Ark. 1975). We also note that the comments to this instruction indicate that the determinative factor in its applicability is whether a particular road is regularly used by the public. See AMI Civil 3d 1801 (citing <u>Tomlinson</u>, 94 S.W. at 613). The jury was specifically instructed on this latter issue, and we find that instruction to have accurately reflected the law set forth in <u>Haynes</u>, 5 S.W.2d at 739.

Further, our review of the jury instructions as a whole leads us to conclude that the jury was adequately appraised of the issues in the case. The instructions on negligence, for example, incorporated the concept that if Union Pacific did not use ordinary care in its operation of the whistle and that breach of duty resulted in the wrongful death of Ellis, the railroad should liable for her death, whether that duty was

statutorily imposed or not.  The instructions as a whole, thus, were sufficient to "fairly and adequately present the issues in the case to the jury."  <u>Gamma</u>, 105 F.3d at 389-90.

# V.

The Pittmans further contend that by voluntarily disclosing some of the protected material gathered by its investigator, Union Pacific waived its work product privilege. See Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495, 508-14 (1947); 8 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 2021-28 (1994).[3] In response to discovery requests, Union Pacific produced photographs and measurements of the accident scene that the district court determined to be privileged. By utilizing these photographs at trial, the Pittmans argue, Union Pacific effectively waived the work product privilege for the entire contents of its investigator's file.

The work product privilege is designed to promote the operation of the adversary system by ensuring that a party cannot obtain materials that his opponent has prepared in anticipation of litigation. Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1428 (3d Cir. 1991). The doctrine allows for discovery of such documents and tangible things only upon a showing of "substantial need and an inability to secure the substantial equivalent of the items through alternate means without undue hardship" for ordinary work product (such as photographs and raw information), and "only in rare and extraordinary circumstances" for opinion work product (containing mental impressions, conclusions, opinions, or legal theories regarding the litigation). In re Murphy, 560 F.2d 326, 333-36 & n.20 (8th Cir. 1977); see also In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 924-25 (8th Cir.), cert. denied, 117 S. Ct. 2482 (1997); Simon v. G.D. Searle & Co., 816 F.2d 397, 400-02 & n.3 (8th Cir. 1987). Although the Pittmans do not discuss the distinction on

---

[3]Although the Pittmans' brief also referenced the attorney-client privilege, the district court properly identified this issue as more appropriately implicating the work product doctrine. Moreover, because we agree that the undisclosed portion of the investigator's file remained protected by the work product doctrine, we need not address any potential waiver of the attorney-client privilege.

appeal, we will assume, without deciding, that the material sought to be obtained constitutes ordinary work product.

We have stated that disclosure to an adversary waives work product protection as to items actually disclosed. In re Chrysler Motors Corp. Overnight Evaluation Program Litig., 860 F.2d 844, 846 (8th Cir. 1988).

> If documents otherwise protected by the work-product rule have been disclosed to others with an actual intention that an opposing party may see the documents, the party who made the disclosure should not subsequently be able to claim protection for the documents as work product. But disclosure of some documents does not destroy work-product protection for other documents of the same character.

Wright & Miller, § 2024 at 209 (emphasis added); see also Duplan Corp. v. Deering Milliken, Inc., 540 F.2d 1215, 1222 (4th Cir. 1976) ("broad concepts of subject matter waiver analogous to those applicable to claims of attorney-client privilege are inappropriate when applied to Rule 26(b)(3)"); In re United Mine Workers of America Employee Benefit Plans Litig., 159 F.R.D. 307, 310-12 (D.D.C. 1994) (production of documents protected by attorney work product doctrine resulted in waiver of privilege only as to those documents produced).

The work product doctrine is to be applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis. See In re Six Grand Jury Witnesses, 979 F.2d 939, 944 (2d Cir. 1992) (citing Fed. R. Evid. 501). Here, Union Pacific merely utilized as trial exhibits photographs of the accident scene that had been previously disclosed to the Pittmans.[4] In any event, any waiver of work product protection was limited to the photographs themselves. See Chrysler, 860 F.2d at 846;

---

[4]In fact, the photographs were first introduced at trial by the Pittmans as part of their case in chief.

Duplan, 540 F.2d at 1222-23; United Mine Workers, 159 F.R.D. at 310-12; In re Sealed Case, 676 F.2d 793, 818 (D.C. Cir. 1982) ("The purposes of the work product privilege . . . are not inconsistent with selective disclosure -- even in some circumstances to an adversary").

Moreover, the Pittmans have made no attempt to demonstrate the sort of substantial need or undue hardship required by Rule 26(b)(3) before protected ordinary work product may be discovered. See Murphy, 560 F.2d at 334. We conclude, therefore, that the district court did not err in refusing to compel discovery of the remainder of the investigator's file or in denying the Pittmans' motion to reconsider that ruling.

## VI.

The Pittmans dispute two evidentiary rulings. The district court denied motions by the Pittmans to exclude a statement by Ball to the effect that "If I can't have you, no one can," as inadmissible hearsay and to admit previous statements by Ellis's children regarding the mental anguish caused by the loss of their mother. Rulings on admissibility of evidence will not be reversed absent a clear and prejudicial abuse of discretion. See Scheerer v. Hardee's Food Sys., Inc., 92 F.3d 702, 706 (8th Cir. 1996). We find no such abuse of discretion by the district court here.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.