In the Matter of GRAND
JURY (OO–2H).

No. 1:MI:00–114.

United States District Court,
M.D. Pennsylvania.

Nov. 30, 2001.

556

Kim D. Daniels, Assistant U.S. Attorney, U.S. Attorney's Office, Middle District of Pennsylvania, Harrisburg, P.A., for Government.

### MEMORANDUM

RAMBO, District Judge.

Before the court is the United States' motion to compel grand jury testimony and production of documents. The Government served the motion on counsel for the Target of the Grand Jury Investigation. The parties have briefed the issue, and the motion is ripe for disposition.

## I. *Background*

As part of its on going Grand Jury

investigation into "Corporation"[1] and its former "CEO,"[2] the Government subpoenaed "Attorney," who represented Corporation in two litigation matters that are now subjects of the Grand Jury investigation. In the first matter ("the Employee Litigation"), Attorney represented Corporation, "Non–Target Corporation," and CEO against a suit brought by a former Corporation "Employee." The suit alleged breach of contract and defamation of character. In the second matter ("the Brand Name Litigation"), Attorney represented Corporation along with seventeen other drug distributors in an antitrust suit against a prominent pharmaceutical manufacturer.

On August 15, 2001, Attorney appeared before the Grand Jury in Harrisburg, Pennsylvania. Prior to that hearing, Corporation waived its attorney-client privilege. At the hearing, however, Attorney refused to answer any questions about conversations he had with former Corporation "Vice President"[3] and CEO concerning both the Employee Litigation and the Brand Name Litigation. Attorney explained that the joint defense attorney-client privilege covered both matters, and Corporation's waiver did not unilaterally extinguish the privilege for the non-waiving clients.

On August 21, 2001, the Government filed the present motion to compel Attorney to testify before, and produce documents to, the Grand Jury concerning the matters to which he refused to testify at the August 15, 2001 hearing. Based on the following discussion, the court will grant the Government's motion in part and deny it in part.

## II. Discussion

### A. The Employee Litigation

The Government seeks to compel Attorney's testimony concerning conversations between Attorney, Vice President, and possibly CEO about the settlement of the Employee Litigation. Additionally, the Government seeks production of notes taken by Attorney's "Associate" at an interview of Employee conducted pursuant to the terms of the Employee Litigation settlement. Attorney contends that these documents are covered by the attorney-client privilege. In response, the Government notes that Corporation waived the attorney-client privilege. Attorney, however, argues that the statements are part of a joint defense, and, therefore, Corporation cannot unilaterally waive that privilege on behalf of the non-waiving clients. Furthermore, the interview notes are privileged via the attorney work product doctrine.

#### 1. Communications

■■■■ Because evidentiary privileges contravene "the fundamental principal that the public has a right to every man's evidence," such privileges are strictly construed. *University of Pennsylvania v. EEOC*, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (citation omitted). As a result, the burden of establishing entitlement to a privilege rests on the party asserting the privilege. *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989). The attorney-client privilege protects confidential communications made to

---

1. Because the matter is under seal, the court will use generic, terms to describe the parties. The original memorandum and order, dated November 30, 2001, contain the true names of the parties. This document has been produced solely for the purpose of publication.

2. CEO resigned as Corporation's CEO effective October 18, 1999.

3. As of February 2000, Corporation no longer employs Vice President. (Transcript at 82.)

an attorney in his or her professional capacity in those instances in which a strict relationship between the attorney and the client exists. *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 94 (3d Cir.1992) (citations omitted).

■ This protection extends to communications between different persons or separate corporations when the communications are "part of an on-going and joint effort to set up a common defense strategy." *Eisenberg v. Gagnon*, 766 F.2d 770, 787 (3d Cir.1985). In order to qualify for the joint defense privilege, the party asserting the privilege must show that: (1) the communications were made in the course of a joint defense; (2) the statements were designed to further the effort; and (3) the privilege has not been waived. *Haines*, 975 F.2d at 94 (quoting *Matter of Bevill, Bresler & Schulman Asset Mgmt.*, 805 F.2d 120, 126 (3d Cir.1986)).

In this case, the Government contends that Attorney has not established the existence of a joint defense. Additionally, the Government argues that even if there was a joint defense, Corporation waived that privilege. Both the Government and Attorney acknowledge that Attorney represented all parties in the Employee Litigation. Furthermore, both the Government and Attorney acknowledge that the communications at issue were made in furtherance of the parties' efforts in the Employee Litigation. Attorney, therefore, insists that Corporation cannot unilaterally disclose communications between one of the parties and common counsel without violating the joint defense privilege.[4] However, simply because communications take place during the course of a joint defense does not necessarily lead to the conclusion that they are automatically entitled to blanket protection under the joint defense privilege. Instead, the joint defense privilege covers the exchange of confidential communications between joint defendants. *See Haines*, 975 F.2d at 94 ("The joint defense privilege enables counsel for clients facing a common litigation opponent to exchange privileged communications ... and to adequately prepare a defense without waiving [the] privilege." (citations omitted)). "Inherent to the privilege is the consultation of two or more individuals or entities with counsel." *In re Sealed Case*, 29 F.3d 715, 719 (D.C.Cir.1994).

■ In this case, the statements between Vice President and Attorney fall outside of the joint defense privilege. These statements, which are essentially statements between Corporation and its counsel, do not involve the exchange of

---

4. Attorney also argues that the statements between himself and Vice President fall within the corporate attorney-client privilege as enunciated by the Supreme Court in *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). In *Upjohn*, the Court held that statements between a corporate employee and corporate counsel, involving matters within the scope of the employee's duties, are protected by the attorney-client privilege. *Id.* at 394, 101 S.Ct. 677. Attorney further argues that this privilege applies to Vice President, although he no longer works for Corporation. Vice President has not waived. Therefore, according to Attorney, the Government cannot compel the revelation of Vice President's confidential communications with counsel. However, this analysis misses the point. The attorney-client privilege belongs to the client. Corporation, not Vice President, is the client who holds the privilege. Before the Grand Jury, Attorney testified that he represented Corporation, Non–Target Corporation, and CEO in Employee Litigation. (Transcript at 16–17.) He also stated that Vice President was not a party to that matter. (*Id.* at 17.) Because Vice President was not a client, Vice President has no independent privilege. Therefore, Vice President's statements to Attorney were privileged. But, the privilege belonged to the corporate client, Corporation—which has waived that privilege.

confidential information between two co-parties. In such a situation, the privilege is not a collective one, but rather belongs exclusively to the individual client. In this case, the client is Corporation—which has waived its privilege. Because the court finds that Corporation waived its privilege, it will compel Attorney to testify about his conversations with Vice President regarding the Employee Litigation.

■ However, the court will not compel Attorney to testify as to statements made by CEO concerning the Employee Litigation. CEO was a party to that matter, and Attorney represented him. His statements to Attorney and Vice President concerning the Employee Litigation were made in furtherance of the joint defense. CEO has not waived his privilege. Therefore, any confidential statements by CEO, pertaining to the Employee Litigation, are privileged. CEO's statements to Attorney are protected by CEO's individual attorney-client privilege. Just as CEO cannot unilaterally prohibit Corporation from consenting to disclosure of its confidential communications with counsel, Corporation cannot waive the privilege belonging to CEO. If CEO made statements to Vice President, who then relayed those statements to Attorney, those statements fall within the joint defense privilege. Although the Third Circuit has not addressed the issue, the court agrees with Attorney that Corporation cannot unilaterally waive the entire joint defense privilege. *See John Morrell & Co. v. Local Union 304A*, 913 F.2d 544, 556 (8th Cir. 1990); *Interfaith Hous. Delaware v. Town of Georgetown*, 841 F.Supp. 1393, 1400 (D.Del.1994); *Western Fuels Ass'n v. Burlington N.R. Co.*, 102 F.R.D. 201, 203 (D.Wyo.1984) ("[W]aiver of privileges relating to information shared in joint defense communications by one party to such communications will not constitute a waiv-er by any other party to such communications.").

## 2. Work Product

As previously stated, the Government also seeks production of certain documents related to the Employee Litigation. Specifically, the Government seeks production of eight pages of notes taken by Associate while working under Attorney's auspices on the Employee Litigation. As part of the Employee Litigation settlement, Employee agreed to be interviewed concerning certain allegations he made during the course of the litigation. The interview took place on March 1, 1999. Attorney argues that the notes are non-discoverable as attorney work product.

■ The doctrine of work product immunity " 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.' " *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir.1998) (quoting *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)). The doctrine applies in both civil and criminal litigation. *Nobles*, 422 U.S. at 238, 95 S.Ct. 2160. A party claiming work product immunity bears the burden of demonstrating that the materials in question "were prepared in 'the course of preparation for possible litigation.' " *Haines*, 975 F.2d at 94 (quoting *Hickman v. Taylor*, 329 U.S. 495, 505, 67 S.Ct. 385, 91 L.Ed. 451 (1947)); *Conoco, Inc. v. United States Dept. of Justice*, 687 F.2d 724, 730 (3d Cir.1982). If the party asserting the privilege satisfies its burden of proof, the party seeking production may obtain discovery "only upon a showing that [it] ... has substantial need of the materials ... and that [it] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.Pro. 26(b)(3). Furthermore,

even when the party seeking discovery properly demonstrates substantial need, the court must protect against disclosure of the attorney's mental impressions, legal theories, or litigation strategy. *Id.*

■ In this case, the Government seeks production of documents, prepared by Attorney and Associate, that relate to the settlement of the Employee Litigation.[5] Although prepared as part of the settlement process, neither the Government, nor Attorney, contests that the interview notes were prepared in anticipation of litigation. Thus, the burden shifts to the Government. However, the Government offers no explanation of substantial need or undue hardship other than its statements that "the notes may be valuable evidence in the investigation of this case." (Govt. Reply at 8.) Additionally, the Government offers no further justification for the production of documents that undoubtably include an attorney's mental impressions.

Instead, the Government argues that the Employee Litigation and the current Grand Jury investigation are not sufficiently related to protect documents prepared for the former from discovery in the latter. The Government relies upon *In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798, 803 (3d Cir.1979), for the proposition that in order for the work product doctrine to protect against production of documents in a subsequent grand jury investigation, the two matters must proceed at the same time and involve identical subject matter. (Govt. Reply at 10.) In that case, the Third Circuit held that the work product privilege applied in a grand jury proceeding concerning the identical subject matter of the civil litiga-

tion for which the document was prepared. Additionally, the civil litigation and the grand jury proceedings took place at the same time. However, the court explicitly stated: "We therefore need not decide whether the work product privilege applies to all litigation, related or not." *In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d at 803. The Third Circuit, therefore, has never held that in order for Rule 26(b)(3) to apply in a subsequent grand jury investigation, the two matters must be related in subject matter and take place at the same time.

■ Additionally, in *FTC v. Grolier, Inc.*, 462 U.S. 19, 25, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983), the Supreme Court stated, in dicta, that: "the literal language of [Rule 26(b)(3)] protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *Id.* Therefore, according to the Supreme Court's dicta, Rule 26 does not indicate that work product protection is confined to materials specifically prepared for the litigation in which they are sought. Instead, work product remains protected even after the termination of the litigation for which it was prepared. *See id.* The language from *Grolier* set out above, although dicta, provides a particularly strong indication that Rule 26(b)(3) applies to subsequent litigation. While the Third Circuit has not specifically clarified this issue, many other courts that have addressed it have stuck to Rule 26's literal command. *See Frontier Refining Inc. v. Gorman–Rupp Co.*, 136 F.3d 695, 703 (10th Cir.1998) (holding that Rule 26(b)(3) applies in subsequent litigation); *United States v. Pfizer, Inc. (In re Murphy)*, 560 F.2d 326, 335 (8th Cir.1977);

---

5. The work product doctrine also applies to work product prepared by an attorney's agent as long as the agent prepared the document in anticipation of litigation. *Kelly v. Ford*

*Motor Co. (In re Ford Motor Co.)*, 110 F.3d 954, 967 (3d Cir.1997). Therefore, the interview notes come within the ambit of protected attorney work product.

*see also In re Grand Jury Proceedings,* 43 F.3d 966, 971 (5th Cir.1994) (recognizing both approaches—extending work product protection in all subsequent litigation or only in related litigation—and explicitly refusing to choose between the two).[6]

 Because the documents in question were prepared by Attorney for CEO, a party to the Employee Litigation and a subject of the Grand Jury investigation, Rule 26(b)(3) prohibits their disclosure absent a showing of substantial need. The Government has not satisfied this burden.[7] Specifically, the Government has not offered any reason why it could not interview Employee instead of demanding interview notes from CEO's lawyer. This is especially telling in light of the fact that the documents sought undoubtably contain the attorney's mental impressions. Such documents are afforded virtually absolute protection. *Kelly v. Ford Motor Co.,* 110 F.3d at 962 n. 7 (citations omitted). For these reasons, the court will not compel production of the documents pertaining to the Employee Litigation.

### B. *The Brand Name Litigation*

### 1. Communications

The Government seeks to compel Attorney's testimony regarding conversations he had with Vice President about the Brand Name Litigation settlement. Additionally, the Government seeks production of documents concerning that settlement. In response, Attorney argues that he represented seventeen other clients in that matter. None of these clients have waived the attorney-client privilege. Thus, according to Attorney, the Government can neither compel his testimony, nor order production of the documents sought.

 While the court agrees with Attorney that Corporation's waiver cannot operate to waive the privilege belonging to the other clients, the court holds that the communications between Attorney, Vice President, and CEO fall solely within Corporation's privilege.[8] Like the communica-

---

**6.** The Government also argues, albeit very briefly, that even if the documents are entitled to work product protection, that protection derives from the joint defense privilege, and Corporation has waived its privilege. However, the work product doctrine is broader than the attorney-client privilege. Unlike the attorney-client privilege, both client and lawyer may assert work product protection. *In re Sealed Case,* 29 F.3d 715, 718 (D.C.Cir.1994); *In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d at 801 (citations omitted). Furthermore, waiver of the attorney-client privilege does not necessarily waive the work product privilege. 6 Moore's Federal Practice § 26.70(8) (3d ed.1997) (citing *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480, 483 (4th Cir.1973)).

**7.** Instead, the Government argues that *In re Grand Jury Investigation,* 599 F.2d 1224 (3d Cir.1979), sanctions access to interview memoranda prepared by an attorney. That case, however, is factually distinct from the instant matter. In that case, attorneys for the corporate subject of a grand jury investi-

gation interviewed several employees involving the matter later investigated by the grand jury. In the interim period between the interview and the initiation of the grand jury investigation, one of the interviewees died. The corporation conceded that the Government demonstrated "good cause to discover the questionnaire and interview memoranda of [the corporation's] *deceased* employee." *Id.* at 1231 (emphasis added). However, the court would not extend this holding to the living interviewees. *Id.* at 1232 ("But because the government has made absolutely no effort to secure their testimony, the interviewees' unavailability is purely conjectural.").

**8.** CEO was not a party to the Brand Name Litigation. Therefore, his communications with Attorney and Vice President concerning that matter are considered Corporation's communications. Because Corporation waived its attorney-client privilege, the court will compel Attorney to testify as to CEO's statements regarding the Brand Name Litigation. *See supra* note 4.

tions between Vice President and Attorney in the Employee Litigation, the privilege at issue is not collectively held because the communications do not involve the non-waiving co-parties. Contrary to Attorney's assertion, Attorney, not Corporation, negotiated the settlement on behalf of all eighteen clients as common counsel. The joint defense privilege protects the exchange of confidential information between co-parties and, in this case, confidential joint communications between the co-parties and their common counsel. The joint defense privilege does not protect the consultation of one client with common counsel. Such communications are protected by each co-party's individual attorney-client privilege. The communications between Vice President, CEO, and Attorney implicated Corporation's privilege. Corporation has waived that privilege.

■ Because the conversations at issue implicate only Corporation's privilege, the court will compel Attorney's testimony concerning the substance of the communications he had with CEO and Vice President regarding the Brand Name Litigation settlement. However, to the extent that these communications involve statements made by non-waiving clients to Attorney, Vice President, or CEO, the court will not compel their revelation. Those statements implicate the joint defense privilege. As previously stated, Corporation may not unilaterally waive that privilege.

**2. Work Product**

■ As a threshold matter, the court concludes that documents prepared solely for the non-waiving Brand Name Litigation clients are not protected from discovery in the Grand Jury proceedings. Those documents were not prepared by or for a party to the subsequent litigation and therefore, are not covered by the work product doctrine. *See* Fed.R.Civ.Pro.

26(b)(3). Thus, the court will order their production.

■ All other documents pertaining to the Brand Name Litigation were prepared by or for Corporation, a party to the Brand Name Litigation and the subject of the Grand Jury investigation. As such, all of these documents are protected from discovery by the work product doctrine. *See FTC v. Grolier*, 462 U.S. at 25, 103 S.Ct. 2209; Fed.R.Civ.Pro. 26(b)(3). Corporation has waived this protection. However, as previously stated, the work product doctrine is broader than the attorney-client privilege and may be asserted by both the attorney and the client. *See In re Sealed Case*, 29 F.3d at 718; *In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d at 801. In his answer to the Government's motion, Attorney asserts the work product privilege. The court, therefore, will not order the documents produced absent a showing of substantial need.

The Government has not offered such a justification. Instead, the Government proffers that its motion to compel establishes "good cause for disclosure of the subpoenaed documents." (Govt. Reply Br. at 8.) That document, however, sets out factual allegations against CEO and Corporation. It does not, however, explain why the documents that the Government requests are necessary to its investigation and why it could not procure this information from another source. Absent such an explanation, the court does not find that the Government has established substantial need, and, therefore, the court will not compel production. *See Hickman*, 329 U.S. at 512–13, 67 S.Ct. 385 (holding that a party must show that the material sought is not merely relevant, but also necessary); *United Kingdom v. United States*, 238 F.3d 1312, 1322 (11th Cir.2001) (holding that to overcome the work product privilege a party must show both a substantial

need for the information and that seeking the information through other means would cause undue hardship); *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP,* 124 F.3d 1304, 1308 (D.C.Cir. 1997) (holding that a party does not demonstrate substantial need when it merely seeks corroborative evidence); *Pittman v. Frazer,* 129 F.3d 983, 988–89 (8th Cir.1997) (affirming lower court's order denying discovery of attorney work product where party seeking discovery made no attempt to demonstrate substantial need or undue hardship); *Jason Enters. v. General Accident Insurance Co.,* 1996 WL 346515 at *4, 1996 U.S.App. LEXIS 15350 at *14 (4th Cir. June 25, 1996) (refusing to compel production of documents covered by the work product doctrine when the party seeking production offers no explanation of substantial need).

Furthermore, the court notes that many of the documents that the Government requests contain, or may contain, opinion work product. Because the Government has not satisfied its initial burden of substantial need, the court need not discuss whether the Government has sustained its additional burden as to these documents. The court will not order the production of documents prepared by and for Corporation in the Brand Name Litigation.[9]

### III. *Conclusion*

In accordance with the preceding discussion, as to the Employee Litigation, the court will order Attorney to testify as to his conversations with Vice President. However, the court will not compel Attorney to reveal information passed on from CEO to Vice President and then communicated to Attorney. Nor will the court compel revelation of conversations had in the company of Vice President, CEO and Attorney. Additionally, the court will not compel production of notes pertaining to the Employee interview conducted on March 1, 1999. Furthermore, the court will not compel production of other attorney work product because the Government has failed to demonstrate substantial need as required under Rule 26(b)(3).

As to the Brand Name Litigation, the court will compel Attorney's testimony concerning communications with Vice President and CEO. However, the court will not compel Attorney to testify as to communications he had with representatives of other clients. Nor will the court compel Attorney to testify as to joint communications between Attorney and all clients, including Corporation. Furthermore, the court will not compel the production of documents prepared by and for Corporation in the Brand Name Litigation because the Government has failed to demonstrate substantial need for the documents requested. The court will, however, compel production of documents pertaining to the Brand Name Litigation that Attorney prepared for the other clients. Those documents were not prepared by and for a party to the Grand Jury investigation.

An appropriate order, identifying documents to be produced by their bates number, will follow.

---

9. The court notes, however, that many of the documents that Attorney claims are attorney work product, including telephone logs and attorney hour charts, were not prepared with an eye toward litigation. Therefore, work product immunity does not apply to such documents, and the court will order their production.